## Owensboro City Railway Company v. Tucker.

(Decided June 11, 1912.)

### Appeal from Daviess Circuit Court.

1. Instructions—Ordinary Care and Negligence—Definition of.—In an action against a street railway company for personal injuries, an instruction telling the jury that "By ordinary care is meant such care as is usually exercised by ordinarily prudent persons, and by negligence is meant the absence of ordinary care," there

should have been added the qualifying clause "of like or similar conditions." The standard of ordinary care varies with varying circumstances—the greater the danger the greater the care, the less the danger the less the care.

2. Street Railways—Action Against For Personal Injury—Instructions.—An instruction excusing the railway company only upon condition that the plaintiff "knowing of the approach of the car," attempted to cross the track, was highly prejudicial to it.

E. B. ANDERSON, FUNKHOUSER & FUNKHOUSER for appellant.

GEORGE S. WILSON for appellee.

OPINION OF THE COURT BY JUDGE WINN—Reversing.

In April, 1911, James Tucker, starting to walk across Main street in Owensboro at the intersection of Elm street, collided with or was struck by a car of the appellant railway company. He brought his action below against the company to recover for his injury and obtained a judgment for $1,000. The railway company appeals.

There is no complaint that the case should not have gone to the jury. A reversal is asked because of the instructions given, and certain testimony admitted in plaintiff's behalf. The instructions were erroneous and demand the desired reversal.

The fourth instruction attempted to define ordinary care and negligence in these words: "By ordinary care is meant such care as is usually exercised by ordinarily prudent persons, and by negligence is meant the absence of ordinary care." As is well said by appellant, the standard of ordinary care varies with varying circumstances—the greater the danger, the greater the care, the less the danger, the less the care. What might be adequate care under ordinary conditions might be wholly inadequate care under extraordinary conditions. The observation is well illustrated by the facts in the case at bar. There were two vehicles, a covered huckster's wagon and a top buggy, standing along side each other between the car track and the sidewalk of the street where the car was approaching. The evidence tends to show that Tucker's view of the approaching car was obscured by them. Obviously if this be true the surroundings at that point of crossing were those of more than ordinary danger. If the vehicles obscured the vision of

the motorman of the car the measure of ordinary care owed by him in operating the car might be larger than such as would obtain under everyday conditions. This court has adopted a plain and satisfactory definition of ordinary care in many cases, among which may be mentioned those of West Kentucky Coal Co. v. Davis, 138 Ky., 667, and C., N. O. & T. P. Ry. Co. v. McElroy, 146 Ky., 668. In substance the definition of ordinary care is "such care as an ordinarily prudent person will usually exercise under circumstances like or similar to those proven in this case." Had the trial court in the case at bar added the qualifying measure of like or similar conditions, an apt standard would have been set up for the jury's guidance in the peculiar condition of fact above set out. While we might be disposed to consider the error ordinarily as rather a narrow ground upon which to base a reversal, it seems that the omission of the qualifying clause in the case at bar was misleading.

Upon the trial the court gave an instruction in the following words:

"The court instructs the jury that if they believe from the evidence that the car which struck plaintiff was running at a reasonable rate of speed at the crossing of Main and Elm streets, and notice of its approach thereto was given by ringing the gong, and plaintiff attempted to cross the track, knowing of the approach of the car so close to the approaching car that the motorman in the exercise of ordinary care, and with the means at his command for stopping said car was not able to stop it before injuring plaintiff, then the law is for the defendant, and the jury should so find."

This instruction was offered by defendant without the words "knowing of the approach of the car" in it. These words were added by the court and the instruction as modified by them was given in the language quoted, over the defendant's objection. The instruction in this form was highly prejudicial to the railway company. If the defendant had as a matter of fact discharged its duties of signaling the car's approach and of operating the car at a reasonable rate of speed (there being no claim of any actual discovery of Tucker's peril) it had done all that was required of it; and if the plaintiff was injured in attempting to cross the track over which defendant's car was being properly operated, his right to recover, or rather the railway company's obligation to

pay, under the facts proven, is not affected by his knowledge or his non-knowledge of the car's approach. The instruction given excused the railway company from payment, no matter if it had discharged every duty owed by it, only upon the condition that Tucker knew of the car's approach. The mere statement shows the harmful error in the instruction as given. As offered by the defendant, without the words "knowing of the approach of the car" embraced in it, the instruction should have been given. The instruction is not sustained by the cases of Louisville Railway Co. v. Byers, 130 Ky., 437; Louisville Ry. Co. v. Gaugh, 133 Ky., 467, and Whitman's Admr. v. Louisville Ry. Co., 134 Ky., 6, cited by appellee. In each of them this phase of the discussion turned upon the issue that the party injured, seeing the car's approach, endeavored to cross the track hurriedly in front of it. These cases, in line with the only reasonable view, hold that if the traveler knowingly assumes the risk of crossing in front of the car, the motorman meantime discharging his duty, there can be no recovery. If such facts were in the case at bar, an instruction on them should have been given as indicated in the Gaugh case, and not in the misleading language quoted above as given in the case at bar; but in the absence of testimony upon such an issue, this phase of the matter should have no further discussion. The motorman testified that Tucker ran out from behind the vehicle, but did not say that he endeavored to hurry across the track in front of the car.

Complaint is also made by appellant of the admission of the testimony of Dr. E. R. Pennington. The record, however, fails to disclose any objection upon the trial to the admission of this testimony, or any exception to the fact that it was admitted. We are, therefore, not permitted to review upon this hearing the competence of that testimony. There was, however, submitted to this physician a hypothetical question, framed upon an inquiry as to whether or not the condition in which this physician had found Tucker could have resulted from the injuries which the evidence disclosed he had suffered. To this question proper objection was entered, and to the admission of the answer proper exception was saved. The admission of this testimony was not error. As to whether or not this testimony would have been competent had proper objection been entered to the preceding

testimony of this witness we are not permitted to decide. That question is not before us, and cannot be before us until such time, if ever, as the entire body of testimony of this witness may, on proper exception, be presented to us.

Complaint is likewise made of the testimony of Samuel Tucker, a son of James Tucker, who, over the objection of the railway company, was permitted to state the appetite of the injured man at a later time was bad, and that he did not sleep well. The admission of this testimony was proper. The loss of appetite and inability to sleep were not set up in the petition as a specific injury for which the plaintiff sought recompense; but plaintiff testified that as a result of the accident he could not sleep well, and that he had no appetite, conditions which were admissible in evidence under the pleadings as made, because they reasonably and properly might be expected to follow the shock of the collision and the injuries described. The son's testimony, corroborative of that of the plaintiff's father, was competent.

The judgment of the trial court is reversed.